## RICHARDSON v. STATE.
### No. 978.

Court of Civil Appeals of Texas. Eastland.
June 17, 1932.

Rehearing Denied Oct. 14, 1932.

Kilgore & Rogers, of Wichita Falls, for appellant.

Edwin Weldon, of Archer City, and Bullington, Humphrey & King, of Wichita Falls, for the State.

FUNDERBURK, J.

This is a suit brought by the state of Texas against J. T. Richardson to recover taxes and foreclose a tax lien on certain lands and interests in lands in Archer county. A tender of taxes on a number of tracts of land theretofore made and kept in force was, before final judgment, accepted by the plaintiff, by reason whereof the appeal only concerns taxes claimed to be due upon certain oil royalty interests in land known as the Anderson South pasture and being blocks 1, 14, and 15, for the year 1927; blocks 1, 14, 15, and 16 for the year 1928; and blocks 1, 7, 8, 15, and 16 for the year 1929. The amount of taxes, with interest and penalties, claimed against the particular interests in question, aggregate $9,028.69. It is not questioned that plaintiff's petition contained the necessary allegations to support a recovery of the taxes and foreclosure of the tax lien.

The defendant, in addition to exceptions and a general denial, pleaded, in effect, that he had duly rendered for taxation the properties in question for each of the years 1927 and 1928 at a proper valuation, but that after notice to him, the commissioners' court, sitting as a board of equalization, had, over his protest and after having refused to hear evidence of the proper values of said property, increased and fixed such values in pursuance of a scheme or plan as follows: Said values were determined and fixed by taking the total amount of oil produced for three months preceding the 1st day of January of each of said years and dividing the same by eight to determine the amount of oil produced as royalty for the defendant, and then dividing said amount by ninety-two, to get the average daily production of royalty oil for such period. This sum was then multiplied by an arbitrary number of dollars, being $900 for the year 1927, and $800 for the year 1928. The sums thus determined constituted the valuations fixed by the board and were the same all over Archer county. As to the year 1929, it was alleged that no rendition was made, but that defendant appeared before the board of equalization, offered proof of value, a hearing of which was refused, and the same method employed in fixing the valuation as in 1928. Of the said plan or scheme of valuation it was averred that same "unlawfully and fraudulently discriminated in favor of other property and property owners in Archer County, Texas, and against the owners of oil producing properties, in that property other than oil producing property

was valued at 60% of its true market value, but as to oil property the court made no effort to ascertain the true market value of same, but on the contrary, by employing said arbitrary scheme or plan of valuation, discriminated as between different oil properties, as well as between oil properties and other kinds of property." Defendant further alleged the values at which the several properties were assessed, the true market value, the proper taxable value (that is, 60 per cent. of the market value), and the amount of taxes that would have been assessable according to the proper taxable values, as follows:

For 1927: Assessed value $108,240; cash market value, $106,990; proper taxable value, $64,190; tax $1,514.71.

For 1928: Assessed value, $90,400; market value, $83,180; proper taxable value, $49,665; tax, $1,281.83.

For 1929: Assessed value, $126,890; market value, $87,780; proper taxable value, $52,665; tax, $1,016.42.

There was thus alleged the facts sufficient to show a discrimination against the defendant. It was further alleged that defendant had duly tendered said sums, had kept the tender alive, and same were re-tendered upon the trial. The defendant also filed a trial amendment, alleging other discrimination against him in three respects, namely: (1) That cash, bills and notes receivable, and choses in action were not required to be rendered; (2) that cattle were assessed on the basis of a set schedule of $10 per head for stock cows and yearlings, $15 per head for two year old steers, $20 per head for three year old steers, and $25 per head for steers over three years, which, within the knowledge of the commissioners' court, was not in excess of 20 per cent. of the reasonable cash market value of said property. In this trial amendment defendant re-tendered and again offered to pay the amount of taxes theretofore tendered.

The jury by their verdict found that for each of the years 1927, 1928, and 1929, the method used by the commissioners' court, sitting as a board of equalization for the purpose of determining the value of oil royalties in Archer county, was not a fair, uniform, and equal method of determining said values; that such method resulted in arbitrary discrimination against the defendant in favor of other properties in Archer county generally; that the board of equalization for each of said years refused to consider testimony upon the lack of uniformity in the market value of the oil royalty property as of the 1st of January of each year; that they refused to consider evidence on what would be the market value and the valuation for taxation of the property involved for each of said years; and that said board made an arbitrary discrim-

ination against defendant in assessing the value of his oil royalties or other royalty interests in Archer county in favor of live stock in said county. The jury also, in response to issues submitted, found the fair cash market value of defendant's lands, including the royalty interests stated separately, to be as follows:

For the year 1927:

| | | | | |
|---|---|---|---|---|
| Blk. 1. | O. R. | $123,500.00 | Land | $2000.00 |
| Blk. 14. | O. R. | 23,528.00 | Land | 240.00 |
| Blk. 15. | O. R. | 4,836.00 | Land | 240.00 |
| Total | O. R. | $151,864.00 | Land | $2480.00 |

For the year 1928:

| | | | | |
|---|---|---|---|---|
| Blk. 1. | O. R. | $ 89,941.00 | Land | $2000.00 |
| Blk. 14. | O. R. | 26,910.00 | Land | 240.00 |
| Blk. 15. | O. R. | 6,405.50 | Land | 240.00 |
| Blk. 16. | O. R. | 3,093.50 | Land | 350.00 |
| Total | O. R. | $126,360.00 | Land | $2830.00 |

For the year 1929:

| | | | | |
|---|---|---|---|---|
| Blk. 1. | O. R. | $ 95,116.50 | Land | $2000.00 |
| Blk. 7. | O. R. | 65,147.50 | Land | 240.00 |
| Blk. 8. | O. R. | 3,381.00 | Land | 360.00 |
| Blk. 11. | O. R. | 11,856.50 | Land | 240.00 |
| Blk. 15. | O. R. | 3,875.50 | Land | 350.00 |
| Total | O. R. | $179,376.00 | Land | $3190.00 |

Some days after the verdict of the jury was returned and the jury discharged, the plaintiff, in order to supply pleadings designed to authorize a judgment for plaintiff upon a theory that, if the original assessments were invalid, the trial court could and should make a proper reassessment, filed a trial amendment, alleging that the evidence had conclusively shown that all taxable property in Archer county was assessed by the tax assessor and the commissioners' court, sitting as a board of equalization, at a ratio of 60 per cent. of its actual cash market value on the 1st day of January of each of the years in question; that defendant, by his pleading, had shown that, in calculating the taxes which he claimed to have owed the state, he had determined the amount by taking 60 per cent. of what he claimed was the cash market value on said dates; that it was further shown that the commissioners' court, sitting as a board of equalization, assessed all of the property of the county on a basis of 60 per cent. unless it could be said that the cattle were taken at a lesser amount, as to which it was averred that the evidence was uncertain and of no probative force. It was prayed that the trial court revise the assessments on the tracts in question and render judgment against the defendant upon the basis of 60 per cent. of the cash market value on each parcel of land for the respective years, with foreclosure of the lien, etc.

The court, after overruling a motion of defendant for a judgment in his favor, sustained a motion of the plaintiff to enter judgment in its favor, and accordingly gave judgment upon the theory set forth in plaintiff's said trial amendment. The defendant has appealed.

■■ We are of opinion that upon the pleadings and verdict of the jury the judgment should have been for the defendant. The Constitution requires that taxation shall be equal and uniform. It also requires that property be "taxed in proportion to its value." Constitution, art. 8, § 1. By some process of reasoning not readily understood it has been held that the latter requirement must yield to the former, if assessing authorities have generally assessed property at less than its market value. Lively v. M., K. & T. Ry. Co., 102 Tex. 545, 120 S. W. 852. The pleadings of plaintiff show that lands in Archer county were generally assessed for taxes at a valuation of 60 per cent. of the market value. Such being the case, it is well settled that plaintiff cannot recover taxes based upon an arbitrary valuation of defendant's property at a greater proportion of its market value. Lively v. M., K. & T. Ry. Co., supra; Druesdow v. Baker (Tex. Com. App.) 229 S. W. 493; Power v. Andrews (Tex. Civ. App.) 253 S. W. 870; Vance v. Pleasanton (Tex. Civ. App.) 261 S. W. 457; Id. (Tex. Com. App.) 277 S. W. 89; Rowland v. Tyler (Tex. Com. App.) 5 S.W.(2d) 756; Ogburn v. Ward County Irrigation Dist. (Tex. Com. App.) 280 S. W. 169. The verdict of the jury shows that, according to a preadopted plan, the commissioners' court, sitting as a board of equalization, valued all oil producing lands without reference to their actual market value or real value, save as determined by a plan that took no notice of any differences in the values of such properties, but arbitrarily made same to depend in all cases solely upon the average number of barrels of royalty oil produced daily for a period of ninety-two days preceding the 1st day of January of each year. The commissioners' court refused to hear evidence of the market value of the properties in question. Its action in valuing defendant's property in the manner it did, and resulting as the jury found in discrimination against defendant, was, we think, under the authorities above cited, unquestionably void.

■ The plaintiff undertook to provide against the contingency of the assessments being held void by filing its trial amendment, wherein it was sought to have the court make a reassessment in accordance with the jury's findings of the market value of the properties. Defendant assigns as error the action of the court in permitting the filing of such trial amendment. We are inclined to the view that the right of amendment cannot be extended so far. It is unnecessary, however, definitely to decide the point, and for that reason we need not discuss it. We know of no authority, and none has been cited, to the effect that a district court can assess property for taxation. "The assessment is an indispensable requisite to the validity of a tax against an individual, for, without a valid assessment there can be no lawful attempt to collect the tax or to enforce it against any specific property." 37 Cyc. 987; Yenda v. Wheeler, 9 Tex. 408; Sullivan v. Bitter, 51 Tex. Civ. App. 604, 113 S. W. 193, 195. As said in the last-cited case: "The authority to assess property, save in exceptional cases, is vested in the assessor of taxes of the several counties of the state, and the method of making such assessments is plainly pointed out by statute." In Missouri, K. & T. Ry. Co. v. Shannon, 100 Tex. 379, 100 S. W. 138, 142, 10 L. R. A. (N. S.) 681, Judge Gaines said: " * * * We think * * * probably that it was intended by the framers of the Constitution that all ordinary assessments of property for taxation should be made by" the tax assessor. Reasoning from these authorities, we think certainly the proposition is untenable that suit may be brought to recover taxes never assessed, and upon a finding by a jury of the values at which property in question should have been assessed the trial court may make the assessment, and at the same time award recovery of the taxes. The Legislature has undertaken to provide a different procedure for reassessing property where assessments have been held invalid. R. S. 1925, title 122, chap. 11. The authorities relied upon by appellee were injunction suits in which the plaintiff was under the necessity of doing equity as a condition to the relief sought. Such is not the case here.

With reference to the claim of a discrimination based upon the contention that cattle were assessed at 20 or 25 per cent. of their market value, we regard the condition of the pleadings and evidence as too uncertain to justify any discussion here which may hereafter be taken as a statement of the law of the case. It is sufficient to say that the Constitution in its requirements, both as to uniformity and taxation in proportion to value, makes no distinction between different kinds of taxable property.

Had the trial court given judgment for the amount tendered by the defendant, we would treat the judgment as one by consent and permit it to stand, although there may be no valid assessment of taxes. But since the judgment cannot be affirmed, including as it does taxes never assessed, and to which the defendant has not consented, it will be necessary to order a remand of the case. We cannot reform the judgment, because to do so would require us to pass upon the rights of the state to further proceed under said R. S. 1925, title 122, chap. 11, which may present questions of considerable difficulty and which are not presented by this record or discussed in the briefs.

We omit discussion of other questions raised, since they probably will not arise upon another trial.

For the above reasons we are of opinion that the judgment of the court below must be reversed and the cause remanded, which is accordingly so ordered.